THE THEODORE ROOSEVELT. THE MARY LEE. THE J. S. LAMPREY.

(District Court, E. D. Virginia. April 19, 1907.)

**1. TOWAGE—COLLISION BETWEEN TOWS—NEGLIGENCE OF TOWING TUG.**

A tug which was passing down the James river from Richmond in the night on an ebb tide at a speed of 8 to 10 miles an hour, with a heavily laden barge in tow on a hawser 25 to 30 fathoms in length and a schooner, light, behind on a hawser of the same length, *held* in fault for a collision between the two tows on the ground that it was caused by her slackening speed suddenly, the necessary result being that the lighter vessel overtook the heavy laden barge. The river was a mile wide at the place of collision and the weather calm, and there was no reason why the tug could not have kept control of the tow. The barge *held* not in fault even if, as claimed by the tug, she sheered more or less, which was to be expected when being towed at such high speed.

**2. EVIDENCE—DECLARATIONS—RES GESTÆ.**

A barge and schooner in tow of the same tug, passing down the James River at night, the schooner being behind the barge, came into collision. Shortly before the collision the captain of the schooner, coming on deck, called to the master of the barge to stop sheering, and he replied that the tug "was going all the way round the river." *Held* that, on an issue between the tug and barge as to the fault for the collision, such statement was admissible in evidence as part of the res gestæ.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 339–350.]

In Admiralty. Suit for collision.

Edward R. Baird, Jr., Esq., for libelant.
John W. Oast, Jr., for tug.
Hughes & Little, for schooner.

WADDILL, District Judge. On the evening of the 13th of February, 1907, about 4:30 o'clock, the steam tug Mary Lee left the port of Richmond with the barge Theodore Roosevelt and the schooner J. S. Lamprey in tow, en route to Hampton Roads. The Roosevelt was a large barge, laden with about 3,600 railroad ties for Baltimore, and the Lamprey was a three-masted schooner returning from the port of Richmond light. The tow proceeded down the river without special incident until about 4 o'clock on the morning of the 14th of February, when some mile and a half above Hog Island Point, and while passing through Goose Hill Slue, the Roosevelt sustained the injury sued for by the schooner's colliding with it. The barge was next to the tug, the hawser between it and the tug being some 25 or 30 fathoms long, and the schooner was on a hawser of about the same length, following the barge. The conditions of wind and weather were all favorable to a successful voyage, the tide ebb, wind blowing slightly from the south-southwest, the night not very dark, the river about a mile wide at the point of collision, and there were no apparent causes for the accident.

The tug seeks to place the fault of the collision upon the navigators of the barge because of their negligence in improperly steering the same, and especially for the alleged rankness of a sheer on the part of the barge immediately preceding the collision, whereas the barge insists that whatever fault it was guilty of was attributable solely to the

erratic manner in which the tug was navigating at and about the time of the occurrence, in that the tug suddenly hauled to port, and thence to starboard, and then slackened her speed; and the tug says that, while regularly on her course at and about the point of collision, the barge took a rank sheer to the starboard, which necessitated the tug at once porting to bring the barge on to her course, which was done, and there-afterwards necessitated the immediate starboarding of the tug to prevent the breaking of the hawser, and that the barge then sheered to port and while on that sheer the schooner overtook and collided with the barge.

Quite a number of witnesses were examined bearing upon the occurrence at and immediately preceding the collision, and the conflict in the evidence was sharply drawn; but upon a careful review of the same and the circumstances of the case, it is quite apparent to the court:

First. That the collision was the result of the negligence of those in charge of the navigation of the tug, and that there was no excuse for the collision under the circumstances of this case with the exercise of proper prudence and caution on the part of the tug which had control of and was responsible for the tow's movements. Those navigating the tug were charged with knowledge of the fact that the tide was ebb; that the barge immediately following her was heavily laden; that to slacken her hawser was to stop the navigation of her tow; and that a light vessel following the loaded barge would necessarily or almost inevitably result in the schooner's quickly overtaking and colliding with the barge. That the tug did thus slacken her hawser and in effect stopped the movement of the tow except under its own momentum is virtually conceded, and that the schooner collided with the barge is what might have been expected, and actually followed. Under the existing conditions of wind, weather, and tide, and having regard to the channel's width at that point, of some mile or more, there was no excuse for the tug, whether to correct a sheer of the barge or not, to slacken her hawser to such an extent as to lose control of the movement of the tow, so that one part of it would collide with the other; and she will not be excused for a failure to recognize the existence of these conditions, and the consequences of what would flow from the omission to observe the same.

Secondly. The effort to place the responsibility for the collision or any part thereof on the barge should not prevail, for the reason that it is quite manifest from the whole case that the barge is in no way responsible for what occurred. The attempt was made to show that during the entire voyage the barge steered badly, and especially during the latter part of the trip. It is admitted that this was a good steering barge ordinarily, and, so far as this trip was concerned, the speed made by the tug of between eight and nine miles an hour easily accounts for any unusual sheer on her part. The evidence is undisputed that all barges sheer more or less when proceeding at a rate of speed of above three miles an hour. Any sheering of the barge at and about the time of the collision may largely be attributed to error in extremis, if there was such sheering. The captain of the schooner, a witness introduced in behalf of the tug, says when he came on deck and saw how the

vessels were moving that he hollered to the man on the barge that, if he did not stop sheering, he would chafe his hawser, who replied that the tug was going all the way round the river. This statement of the master of the barge goes far to account for the collision. It was part of the res gestæ. It was the answer given by the barge's master at the moment of the occurrence, in the dead hour of the night, when there was no possible opportunity to fabricate a statement, and shows conclusively the motive actuating him in the navigation of his barge.

Third. The effort on the part of the tug to show that the injury sustained by the barge arose from the alleged collision by it with the tug Spring Garden before it left Richmond, and not by the one at Hog Island Point, is not borne out by the evidence; but, on the contrary, is unsupported thereby.

Fourth. The schooner was entirely free from fault for the collision, and should not in any way be held responsible therefor.

It follows from what has been said that the collision was solely the fault of the tug Mary Lee, and a decree may be entered so finding.